## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| BENJAMIN LITTLE, )<br>1003 South Leighton Avenue )<br>Anniston, AL 36207 )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>TROY KING, in his official capacity as Attorney )<br>General for the State of Alabama, )<br>500 Dexter Avenue )<br>Montgomery, AL 36130 )<br>)<br>    Defendant, )<br>)<br>    and )<br>)<br>ERIC HOLDER, in his official capacity as )<br>Attorney General of the United States, )<br>950 Pennsylvania Avenue, NW )<br>Washington, DC 20530-0001 )<br>)<br>    Nominal Defendant. )<br>) | Case No.<br>(Three-Judge District Court Requested) |

_____ )


### COMPLAINT UNDER SECTION 5 OF THE VOTING RIGHTS ACT

    Plaintiff Benjamin Little brings this Complaint for declaratory and injunctive

relief against defendant Troy King.

### NATURE OF ACTION

    1.   This is an action for declaratory judgment arising out of Alabama's refusal to

obtain preclearance under § 5 of the Voting Rights Act of 1965, as amended, ("VRA"), 42

U.S.C. § 1973c, for Alabama Act No. 95-698 ("Alabama Act"), which altered practices and

procedures in judicial elections.  It seeks permanent injunctive relief to enjoin defendant Troy

King and the Office of the Attorney General of Alabama ("AGA") from enforcing the Alabama

Act until preclearance is obtained.  The Attorney General of the United States is named as a

nominal defendant only because his participation may be appropriate to afford complete relief

based on earlier determinations by the Attorney General of the United States that preclearance

under § 5 was required.

2.      Section 5 of the VRA prohibits the enforcement in any jurisdiction covered by

Section 4(b) of the Act, 42 U.S.C. § 1973b(b), of any voting qualification or prerequisite to

voting, or standard, practice, or procedure with respect to voting different from that enforced or

in effect on the date used to determine coverage, until preclearance is obtained either by a

declaratory judgment from a three-judge district court in the United States District Court for the

District of Columbia, or by no objection within a sixty day period following a submitted and

non-withdrawn request to the Attorney General of the United States by the covered jurisdiction.

3.      The State of Alabama is a covered jurisdiction within the meaning of § 5 of the

VRA, as amended.  It has continuously been listed as a covered jurisdiction since November 1,

1964.  28 C.F.R. Part 51, Appendix.

4.      State legislation affecting the election of county judges has been held by the

United States Supreme Court to require § 5 preclearance before those changes can be given legal

affect.  *Lopez v. Monterey Cnty., Cal.*, 519 U.S. 9 (1996) (hereinafter *Lopez I*); *Lopez v.

Monterey Cnty., Cal.*, 525 U.S. 266 (1999) (hereinafter *Lopez II*).

5.      The unique Alabama Act requires: (1) that Alabama state court judges disclose

campaign contributions publicly and recuse themselves from cases where one of the parties has

contributed over a certain amount of money; and (2) that all attorneys of record disclose the

\\\DC - 700417/000640 - 3115061 v2

amount of campaign contributions given to the presiding judge (or appellate court judge) by the client, the attorney, other lawyers in practice with the attorney, and any employees acting under the direction of the attorney or acting under the direction of those in practice with the attorney.

6.      This Alabama Act was a change in the "standard, practice, or procedure with respect to voting," within the meaning of § 5 of the VRA and, therefore, requires preclearance.

7.      The AGA initially submitted the Alabama Act for preclearance.  However, before receiving preclearance from the Attorney General of the United States, the AGA withdrew the Alabama Act from preclearance consideration.  The AGA repeatedly has stated to the United States Department of Justice that "Section 5 does not apply."  Although the Alabama Act has never received preclearance, the AGA has maintained to the Department of Justice that "The State of Alabama will enforce [the Alabama Act]."

8.      Plaintiff Benjamin Little intends to contribute to the electoral campaigns of judicial candidates in the future but has refrained because he fears that the Alabama Act will be enforced and that his preferred judicial choices will not be allowed to preside over any litigation in which he is a party.  As an elected government official, he had been a litigant in Alabama courts where recusal of a judge has been sought under the Alabama Act.  He has a legitimate fear that the AGA will permit the invocation of the unprecleared Alabama Act against him in the future.

9.      An actual controversy accordingly exists between the parties regarding whether the Alabama Act can be enforced in Alabama without preclearance.  Specifically, Plaintiff seeks a declaration that the Alabama Act requires preclearance and an injunction to enjoin the AGA from enforcing the Alabama Act without preclearance.

## PARTIES

10.     Plaintiff, Benjamin Little, is a resident and citizen of the State of Alabama.  He is an African-American and is a registered voter in the State of Alabama.  He is also now serving his third term as a member of the City Council of the City of Anniston, Alabama.  Mr. Little intends to contribute to the electoral campaigns of judicial candidates in the future but has refrained because he fears that the Alabama Act will be enforced to his detriment.

11.     Defendant, Troy King, is the AGA.  As such, he has the duty to enforce the laws of Alabama.  He also has the primary responsibility in Alabama for submitting to the Attorney General of the United States in Washington, D.C. or to a three-judge district court in Washington, D.C. all new laws, practices, and proceedings that require preclearance under the VRA, 42 U.S.C. § 1973c.

12.     Nominal Defendant, Eric Holder, is the Attorney General of the United States.  As such, he is the head of the Department of Justice and is the chief legal officer of the United States.

## JURISDICTION

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights and elective franchise), 28 U.S.C. §§ 2201-2202 (Declaratory Judgment Act), and 42 U.S.C. §§ 1973c, 1973j(d), 1973(f), 1973*l*(b), provisions of the VRA, as amended.

14.     This Court has personal jurisdiction over Defendant King, in his official capacity, because Congress in § 5 of the VRA required covered jurisdictions to come to Washington, D.C. for administrative or judicial preclearance and because he and his predecessors in office have sufficient personal and/or business contact with the district in their past submissions of various

preclearance matters to Washington, D.C.  Such contacts involving the Alabama Act include letters dated March 7, 1996 (*see infra* ¶ 22), May 20, 1996 (*see infra* ¶ 24), and July 30, 1996 (*see infra* ¶ 26).

15.     Venue is proper in either the United States District Court for the District of Columbia or in the United States District Court for the District of Alabama.  The Supreme Court in *Allen v. State Board of Elections*, 393 U.S. 544 (1969), held that private litigants seeking a declaratory judgment that a covered state's new enactment is subject to § 5 may be brought in the local district court pursuant to 28 U.S.C. § 1343(4).  However, the Supreme Court did not preclude venue in this Court if the individual litigant had sufficient resources to maintain an action outside the district in which he resides.  *Allen*, 393 U.S. at 559-60 (observing also that the State has sufficient resources to appear in actions "in the Nation's Capital").  Under 28 U.S.C. § 1391(b), venue is appropriate in the District of Columbia because the preclearance correspondence between the AGA and the Department of Justice was sent to and from, and thus occurred in, Washington, D.C.  Venue also is appropriate in the District of Columbia under 28 U.S.C. § 1391(e) because nominal Defendant Eric Holder is an officer of the United States acting in his official capacity, and he and the Department of Justice reside in this district.

16.     This Court's jurisdiction over this action requires a three-judge district court panel.  42 U.S.C. § 1973c(a); *see also Allen,* 393 U.S. at 563.  In *LaRouche v. Fowler*, 152 F.3d 974, 982 & n.6 (D.C. Cir. 1998), aff'd, 524 U.S. 1035 (2000), the United States Court of Appeals for the District of Columbia Circuit held that a three-judge panel is required unless Plaintiff's § 5 claim is "wholly insubstantial" or completely "without merit."  On the facts of this case, where the United States Department of Justice and the Alabama Supreme Court have stated in writing that preclearance of *this* Alabama Act is required, and where the AGA has taken the contrary

position that preclearance is not required, Plaintiff's § 5 claim is not "wholly insubstantial" or "obviously without merit" within the meaning of this Circuit's test in *LaRouche*.  Therefore, a three-judge district court must be convened.

17.     Plaintiff is mindful of the restrictions on this three-judge district court.  In a § 5 enforcement proceeding, the jurisdiction of the initial three-judge panel is limited to determining (1) whether the changes require § 5 preclearance, and (2) whether it has been precleared.  Further relief, including the decision on the merits whether preclearance should or should not be granted is specifically reserved to the United States Attorney General or to a three-judge district court of the United States District Court for the District of Columbia that is specially convened for that purpose.

## STANDING

18.     Private parties, such as the Plaintiff, have standing to enforce the requirements of § 5.  *See* 28 C.F.R. § 51.63.

19.     Section 5 authorizes a private party to obtain declaratory and injunctive relief to declare and enjoin as unenforceable a state statute of a covered jurisdiction that has not obtained preclearance of "any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect" on November 1, 1964, in Alabama.  The statutory language about a changed "practice or procedure" is as broad as its all-inclusive language which is modified only by "with respect to voting."  Here, in Plaintiff's view, the unprecleared Alabama Act, found in the Alabama Code dealing with political contributions to candidates in judicial elections, falls within what the Supreme Court found to be Congress' intent to "reach any state enactment which altered the election law of a covered State in even a minor way."  *Allen*, 393 U.S. at 566.

- 6 -

20.     The Supreme Court set the parameters of this private cause of action under § 5 in

*Allen*, 393 U.S. at 554-55.  A private plaintiff may seek a declaratory judgment that a new Act in

a covered jurisdiction requires preclearance under § 5 of the VRA.  Further, the Court held that

after a private citizen has proven that the State has failed to submit a covered enactment for

approval under § 5, "the private party has standing to obtain an injunction against further

enforcement, pending the State's submission of the legislation pursuant to § 5."  *Id.* at 555.  This

is precisely the relief sought by Plaintiff herein.

## FACTS

21.     At the regular session of the Alabama Legislature of 1995, the Alabama

Legislature passed the Act (Alabama Act No. 95-698), codified as the following two statutes

("said statutes"), having an effective date of January 1, 1996:

> Ala. Code § 12-24-1 (1975).  **Recusal of justice or judge due to campaign contributions**:
>
> The Legislature intends by this chapter to require the recusal of a justice or judge from hearing a case in which there may be an appearance of impropriety because as a candidate the justice or judge received a substantial contribution from a party to the case, including attorneys for the party, and all others described in subsection (b) of Section 12-24-2.  This legislation in no way intends to suggest that any sitting justice or judge of this state would be less than fair and impartial in any case.  It merely intends for all the parties to a case and the public be made aware of campaign contributions made to a justice or judge by parties in a case and others described in subsection (b) of Section 12-24-2.
>
> Code of Alabama 1975, § 12-24-2.  **Filing by judges, justice, parties, and attorneys of disclosure statements concerning campaign contributions:**
>
> (a)     Any justice or judge of an appellate or circuit court of this state shall file, at least two weeks prior to the commencement of his or her term of office, with the Secretary of State, a statement disclosing the names and addresses of campaign contributors and the amount of each contribution made to him or her in the election

- 7 -

immediately preceding his or her new term in office.
Contributions from political action committees may be accepted if
the committee furnishes to the Secretary of State according to
existing law a list of names and addresses of contributors and an
amount properly attributable to each contributor.  When a justice
or judge does not file this annual statement, the Secretary of State
shall notify the Administrative Office of Courts and that office
shall withhold further compensation to the justice or judge pending
compliance with this section.

(b)     The Supreme Court shall provide under the appropriate
rules of court, a rule or rules which provide as follows: In an
appellate court proceeding the attorneys for all parties shall serve
certificates of disclosure on all attorneys of record before such
court within 28 days after the filing of the notice of appeal; or in a
circuit court within 28 days after notice of the identity of the judge
presiding on the case.  Each certificate shall state the amount, if
any, of campaign contributions by the respective individual donor
or entity to the judge presiding over the case, made in the last
election by the party or real parties in interest, any holder of five
percent  (5%) or more of a corporate party's stock, any employees
of the party acting under that party's direction, any insurance
carrier for the party which is potentially liable for the party's
exposure in the case, the attorney for the party, other lawyers in
practice with the attorney, and any employees acting under the
direction of the attorney or acting under the direction of those in
practice with the attorney.  The failure to file the certificates of
disclosure within the time frames set out above shall not affect the
validity of the filing but the court may impose sanctions provided
for by Rule 37(b)(2)(C, D) of the Alabama Rules of Civil
Procedure, for the failure of a party to comply with this section
after being ordered to do so.

(c)     The action shall be assigned to a justice or judge regardless
of the information contained in the certificates of disclosure.  If the
action is assigned to a justice or judge of an appellate court who
has received more than four thousand ($4,000) based on the
information set forth in any one certificate of disclosure, or to a
circuit judge who has received more than two thousand dollars
($2,000) based on the information set out in any one certificate of
disclosure, then, within 14 days after all parties have filed a
certificate of disclosure, any party who has filed a certificate of
disclosure setting out an amount including all amounts contributed
by any person or entity designated in subsection (b), below the
limit applicable to the justice or judge, or an amount above the
applicable limit but less than that of any opposing party, shall file a

written notice requiring recusal of the justice or judge else such party shall be deemed to have waived such right to recusal.  Under no circumstances shall a justice or judge solicit a waiver of recusal or participate in the action in any way when the justice or judge knows that the contributions of a party or its attorney exceed the applicable limit and there has been no waive of recusal.

22.     On March 7, 1996, the AGA wrote to the Department of Justice and submitted said statutes for preclearance under § 5 of the VRA.  In his request, the AGA accurately described said statutes as follows:

Act No. 95-648 was enacted so that all parties in a case and the public will be aware of campaign contributions by the parties in a case to the particular justice or judge.  It requires justices and judges on the state appellate and circuit courts to file certain disclosure statements before the commencement of their terms.  These statements are in addition to those required by the Alabama Fair Campaign Practices [A]ct for candidates.  It further requires certain parties and attorneys to serve disclosure certificates of contributions to any justices or judges sitting on the appellate court where a case is pending in which the attorney or party is involved, or in a trial court proceeding . . . to the presiding judge in the case.

23.     On May 13, 1996, the Department of Justice responded to the AGA's request of March 7, 1996, asking for supplemental information in order to determine whether to grant preclearance.  The Department of Justice expressed concerns that the recusal provision triggered by the reporting requirements in said statutes would likely result in lower amounts of the individual campaign contributions to candidates for judicial office in Alabama, thus forcing candidates to seek contributions from a wider range of supporters.  The Department of Justice asked the AGA for a response to the allegations that African-American candidates, because of "societal discrimination," face greater obstacles in securing contributions from the public at large and that this could negatively affect African-American judicial candidates.  By its focus on how the Alabama Act could potentially impact actual minority voting, the Department of Justice raised a legitimate concern to be addressed in the preclearance process.

24.     On May 20, 1996, the AGA wrote the Department of Justice advising that "after further review," the AGA was convinced that the said statutes do not require preclearance under the VRA, and accordingly, the AGA withdrew or purported to withdraw his request for preclearance.  He made no effort to rebut the argument made by the Department of Justice in its letter of May 13, 1996.

25.     On July 23, 1996, the Department of Justice responded to the purported withdrawal of the AGA's preclearance submission, again insisting that said statutes require preclearance.  The Department of Justice pointedly said in its new letter:

> We respectfully disagree with your position that no portions of Act No. 95-648 are subject to the preclearance requirement of Section 5 of the Voting Rights Act.  Section 2(a) of Act No. 95-648 requires elected judges to file disclosure statements concerning campaign contributions, and subjects judges who do not comply with this requirement to denial of the salary of their office.  Section 2(b) of the act requires attorneys to file reports of campaign contributions ("certificates of disclosure") not previously required under Alabama law.  To avoid the risk that a particular judge will be barred from litigation involving them (i.e., that the judge will be recused from their case because the amount of their contribution to the judge's campaign exceeds the amount established in Act No. 95-648), potential campaign contributors will have to limit the amount of their contributions to avoid the recusal mechanism established in Section 2 of the Act.  By the same token, this section will likely affect political campaigns of judicial candidates, particularly with regard to their fundraising practices.  These aspects of the law clearly constitute changes in practices of procedures affecting voting.  See the Procedures for the Administration of Section 5 (28 C.F.R. 51.13)
>
> * * *
>
> We remind you that unless the State of Alabama receives a declaratory judgment from the United States District Court for the District of Columbia or the Attorney General [of the United States] interposes no objection to the voting change in the Act No. 95-648, they are not legally enforceable.

26.     On July 30, 1996, the AGA responded to the Department of Justice's letter of July

23, 1996, saying, inter alia:

> **The State of Alabama will enforce Act No. 95-648**, and the
> Attorney General of Alabama will not submit this law for
> preclearance.  Section 5 does not apply.

(emphasis added).  The AGA, unconditionally and unequivocally, guaranteed enforcement by

Alabama without preclearance.  The AGA told the Department of Justice that if the Department

of Justice disagreed, it should enforce the VRA.

27.     By way of background, other judicial activities in Alabama were submitted for

preclearance.  On April 3, 1997, the AGA responded to the Chairman of the Judicial Inquiry

Commission concerning whether Canons 1, 3A(6), and 7 of the Canons of Judicial Ethics

required preclearance.  The AGA held that Canon 7 required preclearance.  Canon 7 required

Alabama judges to refrain from inappropriate political activity and to resign from office if the

judge is a candidate for a non-judicial office.  The AGA subsequently submitted Canon 7 for

preclearance, and it was precleared.  The AGA thereby recognized that laws impacting judicial

elections and offices require preclearance.

28.     On July 18, 1997, the Attorney General of the United States precleared Canon 7

of the Alabama Canons of Judicial Ethics.  In addition, the Department of Justice again insisted

that Act No. 95-648 must be precleared and requested that the AGA reconsider his decision not

to seek preclearance.  The Department of Justice concluded its letter by saying:

> To enable us to meet our responsibility to enforce the Voting
> Rights Act, please inform us of the action the State of Alabama
> plans to take concerning this matter.

29.     On July 23, 1997, the AGA answered the Department of Justice's letter of July

18, 1997, saying:

- 11 -

> **We reiterate that the State of Alabama will enforce Act No. 95-648.** The Attorney General of Alabama will not submit this law for preclearance because Section 5 does not apply.

(emphasis added).  The AGA could not have been more emphatic.  The AGA concluded his letter by saying:

> If you disagree, we **again respectfully suggest that you proceed to enforce your interpretation** of Section 5 in this context.

(emphasis added).

30.     On information and belief, there was no further correspondence after July 18, 1997, between the Department of Justice and the AGA regarding preclearance or enforceability of said statutes.

31.     On November 23, 1998, the Clerk of the Supreme Court of Alabama wrote to the Alabama Judicial Inquiry Commission a letter stating that the Supreme Court of Alabama had, as of that date, not adopted any rules to implement § 12-24-2, stating:

> The official reason for this is that the [Alabama] Act has not been precleared by the Justice Department.

32.     On January 6, 1999, the Administrative Office of Alabama Courts wrote a letter to the presiding circuit judge of Tuscaloosa County, Alabama, advising him that based on the interpretation of the VRA set forth by the Department of Justice:

> [O]ur office must agree that until this legislation is precleared, it is not legally enforceable and our office will not take any action for noncompliance with the Act's provisions.

A copy was sent to an assistant AGA.  The Administrative Office of Alabama Courts sent letters containing the same language as the January 6, 1999 letter to other circuit judges on March 13, 2000, and June 8, 2000.

33.     On January 11, 1999, the Administrative Office of Alabama Courts wrote another

letter to an Alabama circuit judge informing him that based on the Department of Justice's

interpretation

> [U]ntil this legislation is precleared, it is not legally enforceable
> and our office will not take any action for noncompliance with the
> Act's provisions.

Again, the letter reflects the sending of a copy to the same assistant AGA.

34.     On April 30, 1999, the Alabama Judicial Inquiry Commission issued Advisory

Opinion #99-725, in which it answered the following question:  "Must a Judge comply with the

reporting requirement of Ala. Code § 12-24-2?"  It answered the question, *inter alia*, as follows:

> The Commission is not authorized to determine the enforceability
> of a statute; this is a legal question the Judge himself may address.

The Commission went on to reference earlier correspondence.  On subsequent occasions, the

Administrative Office has reiterated its position that said statutes are not under its jurisdiction

and that it would take no action to enforce them or to do anything in the event a judicial officer

fails to comply.  Again, copies were sent to the same assistant AGA.

35.     Individual Justices on the Supreme Court of Alabama also have opined in dicta

about the "legal limbo" of the unprecleared Alabama Act.  In the concurring opinion of Justice

Cook (who happens to be an African-American and who was later defeated by a white candidate,

leaving no African-Americans on the Supreme Court) in *Finley v. Patterson*, 705 So. 2d 834,

835-36 (Ala. 1997), in which four Justices concurred with him, making a majority of the

Supreme Court, he reasoned as follows:

> Through counsel, the appellant has filed a "Motion for
> Disclosure," pursuant to Ala. Code 1975, § 12-24-2, and a "Motion
> to Stay Issuance of Certificate of Judgment."  Section 12-24-2 as
> signed into law as Act No. 95-648, Ala. Acts 1995, on July 31,

1995; it applies to elections occurring after the effective date of the statutes, January 1, 1996.   The statute addresses disclosure statements for campaign contributions and recusal, if the amount of a contribution to a Judge or Justice of an appellate court exceeds $4,000.

I concur to deny these motions.   Notwithstanding that enforceability of the act is in legal limbo, I write specially because, assuming enforceability, the appellant has made no showing that the contribution level that would trigger the operation of the act has been reached.

Although I will not address the merits or the enforceability of § 12-24-2,[1] I will address the language of Act. No. 95-648.  The Act, by its terms, applies to elections occurring on or after January 1, 1996. The movant has not presented this Court any evidence that any Justice voting in the majority has, in an election occurring on or after the effective date of the Act, received a contribution exceeding $4,000 from any party involved in this case so as to trigger the recusal provisions of the statute.

The Fair Campaign Practices Act requires that a judge file with the secretary of state an annual report of contributions in excess of $100.  Upon filing, the disclosure is a public record.  Thus, records of contributions, if any, to the Justices who voted in the majority in this case are readily accessible.

Furthermore, five of the six Justices voting in the majority have not run for election or commenced a new term of office on or after the effective date of the Act.   Hypothetically, if the Justice that commenced a term of office after the effective date of the act recused himself the result in this case would not be affected.  For the reasons expressed, I agree that this motion is properly due to be denied.

> FN1    I say the enforcement of this statute is **in legal limbo** for the following reasons: The attorney general of the State of Alabama submitted Act No. 95-648 to the Department of Justice of the United States for preclearance under Section 5 of the Voting Rights Act.   Thereafter, the Department of Justice responded by letter dated July 23, 1996 to the attorney general stating that on May 20, 1996, the attorney general of Alabama withdrew Act No. 95-648 from submission, on the basis that no portions of the act were subject to the preclearance

- 14 -

requirement.  Disagreeing with the attorney general of Alabama in July 23, 1996 letter, the Department of Justice took the position that Act No. 95-648 required preclearance.  Specifically, the United States Department of Justice's letter states: "We remind you that unless the State of Alabama receives a declaratory judgment from the United States District Court for the District of Columbia or the Attorney General imposes no objection to the voting changes in Act No. 95-648, they are not legally enforceable.  *See Clark v. Roemer*, 500 U.S. 646 [111 S.Ct. 2096, 114 L.Ed.2d 691] [(1991)]; 28 C.F.R. § 51.10."  The attorney general of Alabama responded to the Department of Justice by letter dated July 30, 1996, stating inter alia, the following: "The State of Alabama will enforce Act No. 95-648, and the attorney general of Alabama will not submit this law for preclearance.  Section 5 does not apply.  If you disagree, we respectfully suggest that you proceed to enforce your interpretation of Section 5 in this context."  Thereafter, the attorney general of Alabama by letter dated May 16, 1997, submitted to the Department of Justice Canon 7 of the Canons of Judicial Ethics for preclearance under Section 5 of the Voting Rights Act of 1965.  The Department of Justice, by letter dated July 18, 1997, to the attorney general of Alabama, indicated that no objections were being interposed to Canon 7.  Additionally, the Department of Justice's letter stated the following in regard to Act No. 95-648.

"This also refers to Act. No. 648 (1995), which provides for disclosure statements regarding campaign contributions to justices and judges of the state appellate and circuit court of the State of Alabama.  Your office originally submitted this act to the Attorney General pursuant to Section 5 on March 14, 1996.  We requested additional information regarding your submission on May 13, 1996, and on May 24, 1996, then Alabama Attorney General Jeff Sessions withdrew the submission from Section 5 review, asserting that Act No. 648 (1995) contained no changes affecting voting subject to Section 5.  We responded on July 23, 1996, acknowledging the withdrawal of the submission, disagreeing with the Attorney

- 15 -

General's reasoning, and requesting that Act No. 648 be resubmitted for Section 5 review. Copies of our correspondences are enclosed.

"Our records fail to show that we have received a response from your office to our July 23, 1996 letter. We note that unless the State of Alabama receives a declaratory judgment from the United States District Court for the District of Columbia or the Attorney General interposes no objection to the specified changes, they are not legally enforceable. *Clark v. Roemer*, 500 U.S. 646, 111 S.Ct. 2096, 114 L.Ed.2d 691 (1991); 28 C.F.R. § 51.10.

"While we continue to adhere to the views expressed in our most recent letter, we now find further support for our position in Alabama Attorney General Opinion No. 97-00156 (Apr. 3, 1997), which determined that Canon 7 required Section 5 preclearance. We request that your office reconsider its previously expressed position in light of the 1997 [Alabama] Attorney General opinion.

"To enable us to meet our responsibility to enforce the Voting Rights Act, please inform us of the action the State of Alabama plans to take concerning this matter."

I am unaware of any information indicating that these differences in opinion and position between the attorney general of Alabama and the United States Department of Justice have been resolved.

(emphasis added).

36.     Alabama Supreme Court Justice Brown, in a case where a litigant invoked the

said statute and where Justice Brown refused to recuse herself, said, speaking only for herself, in

*Ex parte McLeod*, 725 So.2d 271, 274 (Ala. 1998):

In 1996, the Legislature attempted to deal with the question of judicial campaign contributions, by adopting § 12-24-1 and § 12-24-2.[2]   Through this legislation, the burden of disclosing a campaign contribution has been placed on the donor party—the party who can most easily carry this burden and carry it at the least

- 16 -

cost. Section 12-24-2(b), Ala. Code 1975. A judge, on the other hand, is required only to publicly file a statement of contributions with the secretary of state. Section 12-24-2(a) Ala. Code 1975. The burden imposed by the Court of Civil Appeals goes beyond even that imposed by the Alabama Legislature. [3]

> FN2 Although this legislation became effective on January 1, 1996, it is inapplicable to the present case. The contribution at issue in this present case was made for an upcoming election. The disclosure provisions of § 12-24-2 apply only to contributions made in the last election. We would also note that "preclearance" of this act by the United States Justice Department is still pending. *See Finley v. Patterson*, 705 So.2d 834, 835 (Ala. 1997).

> FN3 If and when that Act is cleared by the United States Justice Department, a contributing party will have the burden of disclosing any contributions made to the judge (trial or appellate) in that party's case. Therefore, it would be futile for this Court to impose on judges a duty to disclose contributions when, upon the Justice Department's approval of the new statute, that duty will shift to the contributing parties.

> We cannot justify creating for trial judges a duty of direct disclosure when an inquiry by the party would accomplish the same end.

Justice Brown admitted that preclearance is "questionable," but the question is still unaddressed by any entity who has authority to answer it. The question will remain unanswered unless and until this Court provides an answer.

37.    In *Brackin v. Trimmier Law Firm*, 897 So.2d 207, 233 (Ala. 2004) (Brown, J., in statement of nonrecusal), Justice Brown, in her statement of nonrecusal, said:

> Section 12-24-2(a), Ala. Code 1975, requires a justice or a judge, before beginning his or her term of office, to file with the secretary of state a statement disclosing the name and addresses of contributors to the justice's or judge's political campaign. Subsection (b) requires the parties in a case to file statements disclosing "the amount, if any, of campaign contributions by the respective individual donor or entity to any justice or judge of an appellate court where the case is pending, or if it is a trial court

proceeding, the amount, if any, of campaign contributions by the respective individual donor or entity to the judge presiding over the case, made in the last election by the party or real parties in interest, any holder of five percent (5%) or more of a corporate party's stock, any employees of the party acting under that party's direction, any insurance carrier for the party which is potentially liable for the party's exposure in the case, the attorney for the party, other lawyers in practice with the attorney, and any employees acting under the direction of the attorney or acting under the direction of those in practice with the attorney."

Finally, subsection (c) of § 12-24-2 requires that any justice or judge of an appellate court who has received more than $4,000, based on the information contained in the certificates of disclosure required by § 12-24-2(b), must automatically recuse himself or herself form the case.

There are several problems with Brackin's argument that these Code sections require my recusal. First, as noted above, the Alabama Bankers Association is not a party to this case, nor does it fit into any of the categories in § 12-24-2(b) that must disclose campaign contributions. Second, as noted above, the Alabama Bankers Association did not contribute to my campaign. Finally, the fact that it is questionable whether §§ 12-24-1 and -2, Ala. Code 1975, which have not yet obtained "preclearance" from the United States Justice Department under the Voting Rights Act of 1965, are even enforceable has been well documented by this Court. *See Ex parte McLeod*, 725 So.2d 271, 274 n.2 and n.3 (Ala. 1998); *Finley v. Patterson*, 705 So.2d 834, 835-36 N. 1 (Ala. 1997) (Cook, J., concurring specially). Brackin does not address the issue whether these Code sections are enforceable. She even makes the baffling assertion that "[i]n fact, *this Court* has interpreted this section [§ 12-24-2(c)] to mean that a campaign contribution to a circuit judge in excess of $2,000 will presumptively bias a circuit court judge in the mind of the public." In support of this statement, Brackin cites *Ex parte Bryant*, 675 So.2d 552 (Ala. Crim. App. 1996)–an opinion issued by the *Court of Criminal Appeals.*[5] **I am not aware of any opinions in which this Court has resolved the issue of the enforceability of §§ 12-24-1 and -2, Ala. Code 1975, and because Brackin does not attempt to address this issue, I will not attempt to resolve it here.**

> FN5 I also note that Brackin, in this statement, is referring to the provisions of § 12-24-2(c) that requires the recusal of a circuit court judge who has received more than $2,000 based on the information contained in the certificates of disclosure, instead of

the provision that requires the recusal of an appellate court judge or justice who has received more than $4,000 based on the information contained in the certificates of disclosure. Obviously, the provision pertaining to circuit court judges is not applicable to this case.

38.     As to this Alabama Act, in *Rabiee v. Riley*, 2-06-cv-1395-RDP, slip op. (N.D. Ala. dismissed without prejudice Feb. 6, 2007), a three-judge panel of the United States District Court for the Northern District of Alabama was convened to resolve whether the Alabama Act required preclearance under § 5.  There, the court never reached the preclearance question. Instead, the court dismissed the lawsuit because it lacked an actual case or controversy when the plaintiffs changed position to argue that preclearance was not required.  The court noted that plaintiffs' trial brief stated that the Alabama Act did not require preclearance and that it agreed entirely with the defendant's trial brief.  Finding that there was no longer an actual controversy between the parties, the court dismissed the case.

39.     On information and belief, Plaintiff is unaware of any action taken by the Attorney General of the United States, by the AGA, or by the Supreme Court of Alabama to implement or to enforce the Alabama Act, or to obtain preclearance.

40.     Nonetheless, the concern that the unprecleared Alabama Act still is cited in Alabama courts and may be enforced is real.  In a recent civil tort litigation, *Little v. Robinson*, CV-2009-900093.00, slip op. (Ala. Cir. Ct. Dec. 4, 2009), in which this Plaintiff was the actual plaintiff, Judge Howell presided over the matter even though the defense counsel had provided well over $2,000 and over 20% of the total contributions received by the Judge in the last election.  Although the said statutes, if enforceable, would have required Judge Howell to recuse himself, the Judge continued to preside and granted Defendant's Motion to Dismiss.

41.     Plaintiff has been involved in litigation where the said statutes, if enforceable, could have applied.  Although the said statutes have not been enforced before, Plaintiff has a legitimate fear that the said statutes could be enforced against him in his personal or official capacity at any time, either by the AGA or by motion from an opposing litigant.  The Plaintiff is refraining from providing future contributions to judicial candidates because he is fearful that the said statutes will be enforced at some later uncertain date in a way that would prejudice the outcome by preventing Plaintiff's preferred judicial choice from presiding over matters in which he may be a party.

42.     As of today, the AGA has not retracted its pledge to enforce the unprecleared statute, and the United States Attorney General and the Supreme Court of Alabama have stated that the Alabama Act must be precleared.  With  the issue being in "legal limbo," and all previous efforts having failed to obtain clarity in this important issue of  unprecleared limits on political contributions in judicial elections under the Voting Rights Act, there is well-founded uncertainty whether and when the AGA will do as he said and enforce the unprecleared Alabama Act .

## <u>COUNT 1:</u>
## DECLARATORY AND INJUNCTIVE RELIEF ALLEGATIONS

43.     Plaintiff repeats and incorporates by reference the allegations set forth in paragraphs 1 through 42 as if fully set forth herein.

44.     There exists among the parties a substantial, bone fide, actual and justiciable dispute.  Unlike *Rabiee*, not only does the complaint assert but Plaintiff will continue to assert that the said statutes are subject to preclearance under § 5.  As that court noted in its unpublished dismissal without prejudice, "[w]hile this Court would have jurisdiction to consider the

preclearance issue *if* plaintiffs had not changed their legal position in this case (i.e., they had continued to argue that preclearance was required), their change of position (and explicit agreement with defendants regarding the preclearance issue) leaves this court with no case or controversy." *Rabiee*, slip op. at 14-15.

45.     Moreover, there is a live case or controversy about the chilling effect of the potential enforcement of this statute on the First Amendment rights of this African-American's potential future contributions to judicial candidates.  The First Amendment provides Plaintiff the right to support the judicial candidates of his choice without the legal uncertainty whether, at some future time, the State of Alabama would choose to enforce said statutes so as to deprive Plaintiff the opportunity to have the judicial candidates of choice participate in judicial decisions involving his cases, both in his personal and official capacities, on the basis of political contributions.  The AGA's much stated position that the unprecleared Act is effective now provides him the arbitrary choice when and against which judge to enforce the Alabama Act in the future. This sword of Damocles could be dropped at any time, including against a judicial candidate, preferred by the Plaintiff, in order to prevent that successful judicial candidate from hearing any matters of that contributor.  This legal limbo, in an area of First Amendment protected conduct in support of judicial candidates, is an intolerable status quo that requires an injunction pending preclearance so this chill does not further taint this fall's judicial elections on November 2, 2010.

46.     Plaintiff seeks a declaration of his right to contribute to judicial candidates without fear that these statutes are enforceable.  Specifically, Plaintiff seeks a declaration that the Alabama Act requires preclearance under § 5.

\\\DC - 700417/000640 - 3115061 v2

47.     Plaintiff also seeks a permanent injunction to prevent the AGA from enforcing the Alabama Act without preclearance.

## RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

A.     Assume jurisdiction and convene a three-judge district court;

B.     Declare that Alabama Act No. 95-698, codified as Alabama Code §§ 12-24-1 and 12-24-2, requires preclearance under § 5 of the VRA;

C.     Enjoin, permanently, the AGA from enforcing Alabama Act No. 95-698 until said Act is precleared under § 5 of the VRA; and

D.     Declare that Plaintiff is entitled to attorneys' fees, costs, interest, and such further relief as the Court deems just and proper.

Respectfully submitted,

_____/s/_____

John C. Keeney, Jr. (D.C. Bar #934307)
Shardul Desai (D.C. Bar # 990299)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone:  (202) 637-5600
Facsimile:  (202) 637-5910
Email: john.keeney@hoganlovells.com
           shardul.desai@hoganlovells.com

Attorneys for Plaintiff
Benjamin Little

Dated:  July 19, 2010