UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
BENJAMIN LITTLE,              )
                              )
           Plaintiff,         )
                              )
           v.                 )        Civil Action No. 10-1216
                              )        Three-Judge Court
TROY KING *et al.*,           )        (MBG, RWR, JDB)
                              )
           Defendants.        )
_____)


Before: GARLAND, *Circuit Judge*, and ROBERTS and BATES, *District Judges*.

Memorandum Opinion for the Court filed by *Circuit Judge* GARLAND.


## MEMORANDUM OPINION

GARLAND, *Circuit Judge*:  Plaintiff Benjamin Little brings this action under the

Voting Rights Act of 1965 (VRA), 42 U.S.C. § 1973 *et seq.*  He seeks a declaratory

judgment that § 5 of the VRA requires preclearance of Alabama Act No. 95-648, which

mandates the disclosure of campaign contributions to state judges and requires judicial

recusal under specified circumstances.  ALA. CODE § 12-24-1, -2.  Little also seeks to

enjoin Alabama Attorney General Troy King from enforcing the Alabama Act until it is

precleared.

The plaintiff has named both Attorney General King and United States Attorney

General Eric Holder as defendants.  Each defendant asks the court to dismiss the

plaintiff's complaint as against him.  In the alternative, Attorney General King requests

that we transfer the case to the United States District Court for the Middle District of Alabama, pursuant to 28 U.S.C. § 1404(a).  For the reasons that follow, we grant Attorney General Holder's motion to dismiss and grant Attorney General King's motion to transfer the remainder of the case to Alabama.

I

Section 5 of the Voting Rights Act bars certain covered jurisdictions, including Alabama, from enacting or administering "any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting," different from that in effect on November 1, 1964, without first:  (1) obtaining a declaratory judgment from the District Court for the District of Columbia that the change "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color," or (2) submitting the change to the United States Attorney General and receiving no objection within 60 days.  42 U.S.C. § 1973c; *see Morris v. Gressette*, 432 U.S. 491, 495 (1977).  If a covered jurisdiction enacts or administers a change in voting procedures without obtaining preclearance in one of these two ways, the Attorney General may sue to enjoin enforcement of the change until the necessary review occurs.  42 U.S.C. § 1973j(d).  A private litigant may also bring such a suit.  *See Allen v. State Bd. of Elections*, 393 U.S. 544, 554-57 (1969); *see also Lopez v. Monterey Cnty.*, 519 U.S. 9, 20 (1996).  These so-called "coverage suits" are heard by three-judge district courts, *see Allen*, 393 U.S. at 563, which may only determine whether § 5 applies to the contested change and whether its approval requirements have been satisfied -- not whether the

procedure has a discriminatory purpose or effect, *id.* at 555 n.19. *See Lopez*, 519 U.S. at 23; *Perkins v. Matthews*, 400 U.S. 379, 384-85 (1971); *Reaves v. U.S. Dep't of Justice*, 355 F. Supp. 2d 510, 514 (D.D.C. 2005) (three-judge court). "If a voting change subject to § 5 has not been precleared, § 5 plaintiffs are entitled to an injunction prohibiting implementation of the change." *Lopez*, 519 U.S. at 20; *see also Allen*, 393 U.S. at 572.[1]

The Alabama State Legislature passed Alabama Act No. 95-648 in 1995. *See* ALA. CODE § 12-24-1, -2. The Act requires an Alabama state court judge to disclose campaign contributions and to recuse from a case when a party, the party's attorney, attorneys in practice with the attorney, or their employees have contributed over a specified amount to the judge. *Id.* It further mandates that the Alabama Supreme Court issue rules requiring attorneys of record in all proceedings to disclose the amount of contributions given to the presiding judge(s) by the attorneys, their clients, other attorneys in practice with the attorneys, and any employees acting at the attorneys' direction. *Id.* § 12-24-2(b).

In 1996, the Alabama Attorney General submitted the Act to the United States Department of Justice for preclearance under § 5 of the VRA, 42 U.S.C. § 1973c. *See* Compl. ¶ 22. The Department requested additional information from the State, saying that it was unable to conclude that the Alabama Act did not have the purpose and would

---

[1] "Once the State has successfully complied with the § 5 approval requirements," however, "private parties may enjoin the enforcement of the new enactment only in traditional suits attacking its constitutionality; there is no further remedy provided by § 5." *Allen*, 393 U.S. at 549-50.

not have the effect of abridging the right to vote on account of race, color, or membership in a language minority. *Id.* ¶ 23 (citing Letter from Deval Patrick, Assistant U.S. Attorney, to Jeff Sessions, Alabama Attorney General (May 13, 1996)). The Alabama Attorney General did not supplement his initial submission and instead withdrew his request for preclearance, concluding that the Act was not subject to the review provisions of § 5. *Id.* ¶ 24 (citing Letter from Jeff Sessions to Deval Patrick (May 20, 1996)). In response, the Department of Justice maintained that the Alabama Act was subject to § 5 and should be submitted for review. *Id.* ¶ 25 (citing Letter from Deval Patrick to Jeff Sessions (July 23, 1996)). Although the State did not re-submit the Act for preclearance, the Justice Department did not sue Alabama to enjoin its enforcement. In the ensuing years, the Alabama Supreme Court has not adopted rules requiring disclosure of campaign contributions, and the Act has not been implemented or enforced. *Id.* ¶ 39.

On July 19, 2010, plaintiff Little -- a citizen and resident of the State of Alabama -- filed the instant action against Alabama Attorney General King and United States Attorney General Holder in their official capacities. Little's complaint seeks a declaration that the Alabama Act is covered by § 5 and an injunction to bar the Alabama Attorney General from enforcing the Act without preclearance. The complaint names Attorney General Holder as a "nominal defendant." Compl. ¶ 12.

On July 21, 2010, the plaintiff's motion to convene a three-judge district court was granted. Thereafter, Attorney General Holder moved to dismiss the plaintiff's claims against him on the ground, inter alia, that he is not a proper defendant. Attorney General

King moved to dismiss the complaint on several grounds, including that venue is improper in the District of Columbia. In the alternative, Attorney General King moved to transfer the case to the Middle District of Alabama. We address those motions below.

## II

We begin with Attorney General Holder's motion to dismiss. The Attorney General contends that he is not a proper defendant because the plaintiff neither asserts claims against nor seeks relief from him. On these points, the Attorney General is plainly correct. Indeed, plaintiff Little acknowledges that he "neither states a claim upon which relief can be granted by the United States Attorney General nor claims any injury that is caused or redressable by the United States Attorney General." Opp'n to Holder Mot. to Dismiss 2.

Little nonetheless contends that he has properly named the Attorney General "solely as a nominal defendant." *Id*. at 1. What he means by this is unclear. There is no Federal Rule of Civil Procedure that uses that nomenclature. Rule 19 does provide a mechanism for joining certain kinds of recalcitrant parties, *see* FED. R. CIV. P. 19, but Little suggests that the Attorney General does not fall within the ambit of that rule.

Rule 19(a)(1) provides that a "person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if":

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1). Rule 19(a) further states that a person who comes within its provisions, and "who refuses to join as a plaintiff[,] may be made either a defendant or, in a proper case, an involuntary plaintiff." FED. R. CIV. P. 19(a)(2). Rule 19(b) then lists factors for the court to consider in determining whether an action should be dismissed if a person to whom Rule 19(a) applies cannot be joined. FED. R. CIV. P. 19(b). Under an earlier version of the rule, persons falling within Rule 19(a) were described as "necessary" parties and those within Rule 19(b) as "indispensable" parties. *See* 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1604, at 35 (3d ed. 2001). Little insists that Attorney General Holder is neither necessary nor indispensable. Opp'n to Holder Mot. to Dismiss 8.

In support of his contention that he may nonetheless name the Attorney General as a "nominal" defendant, Little cites *SEC v. Cherif*, 933 F.2d 403 (7th Cir. 1991). In *Cherif*, the Seventh Circuit described "nominal defendant" status as a "rather obscure common law concept." *Id.* at 414. According to *Cherif*, a "nominal defendant has no interest in the property that is the subject of the litigation." *Id.* at 414 n.13. Nor is there a "claim against him." *Id.* (quoted in Opp'n to Holder Mot. to Dismiss 8-9). Instead, he is "non-interested." *Id.* He is typically a "trustee, agent, or depository . . . who has

possession of the funds which are the subject of litigation" but has "no ownership interest" in them, and who "must often be joined purely as a means of facilitating collection." *Id.*; *see Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch*, 276 F.3d 187, 191-92 (4th Cir. 2002); *see also SEC v. Colello*, 139 F.3d 674, 677 (9th Cir. 1998) (noting that "the standard nominal defendant is a bank or trustee, which has only a custodial claim to the property").

The Attorney General is not a "trustee, agent, or depository," and it is hard to see how *Cherif* or the other cited cases apply here. Little apparently cites them for the proposition that "a nominal defendant is part of a suit only as the holder of assets that must be recovered in order to afford complete relief." *Kimberlynn Creek*, 276 F.3d at 192. In this vein, Little contends that Attorney General Holder is a nominal party because "his participation may be appropriate to afford complete relief." Compl. ¶1. We note that this language parallels the first prong of the necessary party provision of Rule 19(a)(1). *See* Fed. R. Civ. P. 19(a)(1)(A) (referring to a party in whose "absence, the court cannot accord complete relief"). Little, however, maintains that the Attorney General is *not* a necessary party. Opp'n to Holder Mot. to Dismiss 8. Be that as it may, Little does not articulate any way in which the Attorney General's participation would be "appropriate to afford complete relief" in this case. As we have noted, Little seeks no relief from Attorney General Holder, and the relief he requests -- a declaratory judgment and an

injunction blocking the *State* from enforcing the Act until it obtains preclearance -- can be afforded in full without requiring any action by the United States Attorney General.[2]

Little contends that there are circumstances beyond the "trustee, agent, or depository" model in which a party may be named as a nominal defendant. He notes that in *United States of America for the Use and Benefit of J.R. Canion v. Randall & Blake*, the Fifth Circuit stated that the United States is a "nominal party" when a supplier on a government construction contract sues a general contractor under the Miller Act, 40 U.S.C. § 270a-270d. *See* 817 F.2d 1188, 1191 (5th Cir. 1987). As the court explained, however, that is only because the Miller Act expressly requires that "the action be brought in the name of the United States." *Id.* (citing § 270b(b)). The VRA contains no such provision.[3] It is also true that it "is typical with shareholder derivative suits" to name "as a nominal defendant" the corporation for whose benefit the suit is brought. *City of Harper Woods Emps.' Retirement Sys. v. Olver*, 589 F.3d 1292, 1295 (D.C. Cir. 2009);

---

[2] *Cf. City of New Haven v. United States*, 809 F.2d 900, 902 (D.C. Cir. 1987) (noting that the plaintiff sought an injunction "obligating the nominal defendants (the United States, the Secretary of HUD, and the Director of the Office of Management and Budget) to release" funds they had withheld based on an assertedly unconstitutional statutory provision); *Council of and for the Blind of Del. Cnty. v. Regan*, 709 F.2d 1521, 1527 n.41 (D.C. Cir. 1983) (noting that the federal Office of Revenue Sharing could "be joined as a nominal defendant for purposes of relief" in a case in which federal funds that the Office controlled were sought).

[3] Moreover, the court's point was that the United States is *merely* a nominal party in such suits: "it is not entitled to notice of the suit, it need not appear with counsel, it bears no costs, and it cannot be held liable[;] [t]he failure to bring the action in the name of the United States is a mere technical defect." *J.R. Canion*, 817 F.2d at 1191.

*see, e.g.*, *Yablonski v. United Mine Workers of Am.*, 448 F.2d 1175, 1181 (D.C. Cir. 1971).  But again, there is no relevant analogy to this case.

Taking what might appear to be the opposite tack from his contention that nominal parties are non-interested, Little also contends that Attorney General Holder is properly a nominal party because "he has an interest in and relationship to the subject matter of the litigation."  Opp'n to Holder Mot. to Dismiss 2; Compl. ¶1.  Little points out that "Congress has entrusted the United States Attorney General to review preclearance requests under § 5 of the VRA," and that "[t]he United States Attorney General's ties to the issues of this litigation date back to the first time the [Alabama Attorney General] sought preclearance" of the Alabama Act.  Opp'n to Holder Mot. to Dismiss 4.  Little fears that the "Attorney General's right under the VRA to enforce [his] legal position through injunctive relief against the State of Alabama is threatened by the outcome on the substantive issues of this litigation," which could "collaterally estop" him or force him "to accept any adverse precedent."  *Id*. at 2.

This point echoes the second prong of Rule 19(a)(1).  *See* Fed. R. Civ. P. 19(a)(1)(B) (referring to a person who "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:  (i) as a practical matter impair or impede the person's ability to protect the interest").  But that prong requires that the party to be joined "claim" an interest.  Where, as here, the party instead *dis*claims an interest, Rule 19(a)(1) -- which might otherwise provide a basis for joining an unwilling party -- does not apply.  *See Tell v. Trs. of Dartmouth Coll.*, 145

F.3d 417, 419 (1st Cir. 1998); *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props.*, 102 F.3d 677, 682-83 (2d Cir. 1996).

Nor do any of the cases that Little cites support the proposition that a party -- nominal or otherwise -- can be required to stand as a defendant against its will merely because it has an "interest" in the litigation. The principal case Little proffers is a Seventh Circuit opinion that declared that "[f]ormal parties . . . are those who have no interest in the controversy between the immediate litigants but have an interest in the subject matter, which may be conveniently settled in the suit and thereby prevent further litigation; they may be made parties or not, at the option of the plaintiff." *Baltimore & Or. R.R. Co. v. Chi. River & Ind. R.R. Co.*, 170 F.2d 654, 658 (7th Cir. 1948). Accepting arguendo Little's contention that "the term nominal party is the same as formal party," Opp'n to Holder Mot. to Dismiss 3, the court's statement to this effect was pure dictum: the only issue in the case was whether "the court lacked jurisdiction because of the absence of *indispensable* parties." 170 F.2d at 657 (emphasis added). Accordingly, the court did not explain what it meant by an interest that "may be conveniently settled in the suit and thereby prevent further litigation" -- a qualifier that parallels to some extent the language of Rule 19(a) regarding necessary parties.[4]

---

[4] In another case cited by Little, the court granted "plaintiffs' motion to join the State of Illinois as an additional party defendant, pursuant to Rule 19(a)," because "without the State 'complete relief cannot be accorded among those already parties.'" *Ryan v. Cosentino*, 793 F. Supp. 822, 824-25 (N.D. Ill. 1992) (quoting FED. R. CIV. P. 19(a)(1)). That case is unhelpful to Little: the court joined the state pursuant to the first prong of Rule 19(a)(1), which, as discussed above, is inapplicable here because "complete relief" can be accorded in this case without Attorney General Holder's presence.

Whatever is meant by Little's use of the term "nominal defendant," he has not demonstrated that requiring Attorney General Holder's presence in this suit is appropriate. The VRA authorizes the Attorney General to sue to enjoin a covered jurisdiction from implementing a voting change that has not been precleared. *See* 42 U.S.C. § 1973j(d). When the Attorney General declines to pick up the gauntlet, the statute permits private parties to sue. *See Allen*, 393 U.S. at 554-57; *see also Lopez*, 519 U.S. at 20. But it does not authorize the courts to require the Attorney General either to sue on his own or to join a private suit.

To the contrary, the courts have long held that "an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Indeed, the Supreme Court has expressly held that the Attorney General's failure to interpose a timely objection to a change in voting procedures under § 5 is not subject to judicial review. *Morris v. Gressette*, 432 U.S. at 504-05. This Circuit, applying the reasoning of *Morris*, has held that the Attorney General's decision to withdraw an objection that he previously interposed is likewise unreviewable. *Harris v. Bell*, 562 F.2d 772, 774 (D.C. Cir. 1977). Applying both of these cases, a three-judge court in this District dismissed the Attorney General from a private § 5 suit seeking review of his refusal to object to a proposed change in voting procedures. *Reaves*, 355 F. Supp. 2d at 514.

Little suggests that these cases are inapposite because in each the plaintiff asserted claims directly against the Attorney General, while Little names him only as a nominal party with an "interest" in the lawsuit. But the underlying theme of these cases is that the courts must leave it to the Attorney General to decide whether he has an interest and, if so, how he should pursue it. If the Attorney General is concerned about the possibility that an unfavorable precedent could result from this case, or that he would be estopped from arguing that § 5 applies to the Alabama Act, he is free to participate as an amicus or intervenor. *See* FED. R. CIV. P. 24(b)(2) (permitting intervention by a government officer). But no statute, rule, or precedent authorizes us to require the Attorney General's participation against his will, and, as he notes, no court has ever "made the United States a nominal defendant" in a § 5 case. *See* Holder Reply Mem. 7; *see also Allen*, 393 U.S. at 559 ("Of course, in declaratory judgment actions brought by private litigants [under § 5], the United States will not be a party."). It would clearly be inappropriate to do so in a case like this one, in which the plaintiff has not articulated any purpose that the Attorney General's participation would serve.[5] Accordingly, we will grant Attorney General Holder's motion to dismiss. *See generally* FED. R. CIV. P. 21 (providing that "the court may at any time . . . add or drop a party").

---

[5] As discussed below, one purpose that naming the Attorney General might serve is to support venue in this District. But the Court of Appeals has admonished that "[c]ourts in this circuit must examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). We cannot permit "naming high government officials as defendants" solely so that "a plaintiff [can] bring a suit here that properly should be pursued elsewhere." *Id.*

### III

We next address Attorney General King's motion to dismiss this case for lack of venue or to transfer it to the Middle District of Alabama.  In response to King's motion, Little proposes several grounds for finding venue appropriate in this District.

Little's first contention is that the Voting Rights Act itself "authorizes venue in the District Court for the District of Columbia as recognized by the Supreme Court in *Allen v. State Board of Elections*."  Opp'n to King Mot. to Dismiss 7.  In *Allen*, private parties sought declaratory judgments in the United States District Court for the Southern District of Mississippi that new Mississippi voting procedures were subject to the preclearance requirements of § 5.  393 U.S. at 551-52.  The defendants objected.  Noting that § 5 requires a state to sue in the District of Columbia when seeking a declaratory judgment that a new enactment has no discriminatory purpose or effect, *see* 42 U.S.C. §§ 1973c, 1973*l*, the defendants maintained that the same should be true of a suit brought by a private party for a declaration that an enactment is subject to § 5's preclearance requirements.  The Supreme Court disagreed, holding that the "difference in the magnitude of these two issues suggests that Congress did not intend that both can be decided only by the District of Columbia District Court."  *Id.* at 559.  A private coverage suit, the Court said, "may be brought in the local district court."  *Id.* at 560.

Little maintains that, "by using the term 'may be brought' rather than 'must be brought,' the Supreme Court implicitly recognized that venue is also proper in the District Court for the District of Columbia."  Opp'n to King Mot. to Dismiss 9.  But that is not

what the Court held. The question before the Court was only whether the VRA *requires* coverage suits brought by private parties to be filed in this District, as it expressly requires for preclearance suits brought by states. By holding that the VRA does not *require* that private suits be brought in this District, the Court said nothing about the circumstances under which such suits *may* be brought here. Nor does any provision of the VRA address that question.[6]

The provisions that do address that question are in the general venue statute, 28 U.S.C. § 1391. Accordingly, we turn next to Little's second and third arguments, which expressly invoke those provisions. *Cf. LaRouche v. Fowler*, 77 F. Supp. 2d 80, 87 (D.D.C. 1999) (three-judge court) (holding that, because "the Voting Rights Act venue provision only applies to states and their subdivisions," the court "look[s] to . . . the general venue provisions of 28 U.S.C. § 1391(b)").

In support of finding venue proper in this District, Little points to § 1391(e), which provides: "A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity . . . may . . . be brought in any judicial district in which . . . a defendant in the action resides . . . ." 28 U.S.C. § 1391(e)(1). With Attorney General Holder dismissed as a defendant, this provision is

---

[6] Attorney General King contends that *Allen* is also inapposite because it "did not concern venue at all" but rather the jurisdiction of the court. King Mot. to Dismiss 5. Little responds that, although *Allen* used jurisdictional language, its emphasis on the place where § 5 actions could proceed was "quintessentially a question of venue." Opp'n to King Mot. to Dismiss 10. We need not resolve this dispute because, as the above discussion makes clear, even if *Allen* was a case about venue, it did not suggest that venue is always proper in this District.

inapplicable. *See supra* note 5. The only remaining defendant is Attorney General King, who does not reside in this District. *Cf. Jones v. La. State Bar Ass'n*, __ F. Supp. 2d __, 2010 WL 3700828, at 7 (D.D.C. Sept. 16, 2010) (transferring case to another district pursuant to 28 U.S.C. § 1404 because, "[s]ince the . . . defendants located in the District of Columbia have been dismissed, this case has no further connection to this venue").[7]

Little also points to 28 U.S.C. § 1391(b)(2), which states that a "civil action wherein jurisdiction is not founded solely on diversity of citizenship" may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.* § 1391(b)(2). Little maintains that his suit qualifies under this provision because "the State submitted the Alabama Act for preclearance in Washington, D.C. and then withdrew its submission in Washington, D.C." Opp'n to King Mot. to Dismiss 11. Alabama, Little continues, "affirmatively reached out to the District of Columbia when it first sought preclearance under § 5 from the Department of Justice by letter," and thereafter the Alabama Attorney General and the Department of Justice, "in

---

[7] Even if Attorney General Holder were still a defendant, it is doubtful that § 1391(e) would advance the plaintiff's overall venue position. Although no party to this case has noted it, § 1391(e) ends with the following sentence: "Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party." 28 U.S.C. § 1391(e). This means that, "if suit is sought to be maintained not only against a federal defendant embraced within Section 1391(e) but also against an '(a)dditional person( ),' there must be proper venue as specified in the pertinent statutes as to each." *Lamont v. Haig*, 590 F.2d 1124, 1128-29 (D.C. Cir. 1978). "Thus, under § 1391(e) . . . a plaintiff . . . who sues both a federal and a nonfederal defendant who participated in the activity undergirding the lawsuit must press his claim in a district having venue with respect to the nonfederal defendant by authority other than § 1391(e) . . . ." *Id.* at 1131 n.36; *see id.* at 1132.

this District, corresponded no less than half a dozen times concerning this matter." *Id.* Attorney General King counters that § 1391(b)(2) is inapplicable because that "correspondence is not what gives rise to the claim . . . . What gives rise to the claim (if anything) is the passage of the Act and decision by the Alabama Attorney General not to submit the Act for preclearance, events that occurred exclusively in the Middle District of Alabama." King Mot. to Dismiss 9.

We need not resolve the applicability of § 1391(b)(2) to this case because we agree with the Alabama Attorney General's alternative suggestion that transfer of venue, pursuant to 28 U.S.C. § 1404(a), is appropriate.[8] Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). There is no dispute that this action "might have been brought" in the Middle District of Alabama, as that is both the official residence of the only remaining defendant, 28 U.S.C. § 1391(b)(1) (permitting venue in a "district where any defendant resides, if all defendants reside in the same State"); *see* King Mot. to Dismiss 9; Opp'n to Mot. to Dismiss 7, and a "district in which a substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2).

---

[8] *See Gypson v. Wells Fargo & Co.*, 563 F. Supp. 2d 149, 154 (D.D.C. 2008) (noting that, "[e]ven if the venue chosen by the plaintiff is valid, a court is still authorized to transfer the case to another jurisdiction" under § 1404(a)); *see also Reaves*, 355 F. Supp. 2d at 512, 516-17 (transferring a private VRA suit to the District of South Carolina after dismissing the federal defendants).

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks omitted). As this District has noted:

> The private interest factors that are typically considered include 1) the plaintiff's choice of forum, 2) the defendant's choice of forum, 3) where the claim arose, 4) the convenience of the parties, 5) the convenience of the witnesses, . . . and 6) the ease of access to sources of proof. Public interest factors include 1) the local interest in making local decisions about local controversies, 2) the potential transferee court's familiarity with the applicable law, and 3) the congestion of the transferee court . . . .

*New Hope Power Co. v. U.S. Army Corps of Engineers*, 724 F. Supp. 2d 90, 95 (D.D.C. 2010) (internal quotation marks and citations omitted).

Although plaintiff Little has made clear that the District of Columbia is his preferred forum, the "plaintiff's choice of forum is only one relevant factor for [the court's] consideration." *Stewart*, 487 U.S. at 31 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). It is true that the plaintiff's choice of forum is often accorded deference in the § 1404(a) analysis, but less deference is appropriate when the plaintiff has not chosen his home forum. *New Hope Power*, 724 F. Supp. 2d at 95 (collecting cases). Moreover, "where, as here, transfer is sought to the plaintiff['s] resident forum," deference is "further diminished." *Id.* (internal quotation marks and citations omitted). The defendant's choice of forum, of course, is the Middle District of Alabama. And while we do not resolve whether the District of Columbia is also a district "in which a substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. §

1391(b)(2), it is clear that the Middle District -- where the challenged statute was passed and would be implemented -- is such a District and is the one in which the case is centered. *See Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25-26 (D.D.C. 2002) (transferring a case notwithstanding correspondence with a federal agency because "mere involvement on the part of . . . some federal officials who are located in Washington, D.C. is not determinative").

It is also clear that the convenience of the parties tips in favor of Alabama. The only remaining parties, King and Little, both reside in Alabama. King argues that Alabama is the more convenient forum for him, and Little has not suggested that he would be inconvenienced if the action were to proceed in his home state.

Nor is there much dispute that the convenience of the witnesses and the ease of access to sources of proof weigh in favor of Alabama. To whatever degree the correspondence regarding Alabama's initial request for preclearance and subsequent withdrawal bears on Little's claims, that written record is -- as the plaintiff himself states -- "uncontroverted." Opp'n to King Mot. to Dismiss 3. *Compare* Compl. ¶ 7 (alleging that the Alabama Attorney General initially submitted the Alabama Act but withdrew it before obtaining preclearance), *with* Answer ¶ 7 (admitting allegation). The controverted issues in this case are whether the Alabama Act is a "standard, practice, or procedure with respect to voting" subject to § 5, whether Little has standing to make that claim, and whether such a claim is ripe. *See* King Mot. to Dismiss 2. On the latter points, Attorney General King contends that the Act is not presently enforced; that it is not likely to be

enforced; and that, in any event, the Act provides for enforcement by the State's judicial branch and not the Attorney General. *Id.* at 10. In particular, King contends that enforcement cannot begin until the Alabama Supreme Court adopts implementing rules, and that the Clerk of that court has stated that such rules will not be adopted until the Act is precleared. *Id.* at 13. In response, Little maintains that there is a credible threat of enforcement by the Attorney General, that enforcement need not await the adoption of rules, and that Little's recent involvement in litigation in the Alabama state courts supports his claim that the Act chills the exercise of his rights. Opp'n to King Mot. to Dismiss 17-19. With respect to the merits, Little contends that the Alabama Act constitutes a change with respect to voting because it will discourage individuals from contributing to judicial candidates' political campaigns and will thereby affect who is elected. *Id.* at 28, 31. All of the witnesses and sources of proof relevant to all of these issues reside in Alabama. The plaintiff has not suggested any that can be found in the District of Columbia.

Little argues that the public interest supports venue in Washington because Congress "explicitly stated and desired [that this District Court] would control § 5 decisions." *Id.* at 14-15. But as discussed above, this is not the kind of case that Congress reserved for adjudication in the District of Columbia. In *Allen*, the Supreme Court made clear that the provision of the Voting Rights Act that makes the District Court for the District of Columbia the exclusive forum for suits brought by states seeking a declaratory judgment that a voting change has no discriminatory purpose or effect "does

not apply to suits brought by private litigants seeking a declaratory judgment that a new

state enactment is subject to . . . § 5." 393 U.S. at 560. As the Court further explained in

*Lopez*, "[w]hat is foreclosed to" a three-judge court in another district "is what Congress

expressly reserved for consideration by the District Court for the District of Columbia or

the Attorney General -- the determination whether a covered change does or does not

have the purpose or effect of denying or abridging the right to vote on account of race or

color." 519 U.S. at 23 (quoting *Perkins*, 400 U.S. at 384-85). But another "three-judge

district court may determine . . . whether § 5 covers a contested change, whether § 5's

approval requirements were satisfied, and if the requirements were not satisfied, what

temporary remedy, if any, is appropriate." *Id*. And "[s]ince all federal courts are

presumed to be equally familiar with the law governing federal statutory claims," *Intrepid

Potash-New Mexico, LLC v. U.S. Dep't of Interior*, 669 F. Supp. 2d 88, 98 (D.D.C. 2009),

the "familiarity with applicable law" factor does not help the plaintiff, *New Hope*, 724 F.

Supp. 2d at 95.

In sum, we conclude that the balance of factors favors transferring venue to the

Middle District of Alabama. Accordingly, "[f]or the convenience of parties and witnesses

[and] in the interest of justice," we will do so. 28 U.S.C. § 1404(a).

IV

For the foregoing reasons, we will grant the motion of Attorney General Holder

(and the United States) to dismiss Attorney General Holder (and the United States) as a

defendant. We will also grant Attorney General King's motion to transfer the remainder

of the case to the United States District Court for the Middle District of Alabama.   A separate order effectuating that disposition accompanies this opinion.